

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

June 12, 1939

Honorable Tom DeBerry
Member, State Board of Control
Austin, Texas

Dear Sir:        Opinion No. 0-942
Re: Construction of Old Age Assis-
tance Act as amended by Senate
Bill No. 9, Acts 46th Legislature.

We are in receipt of your letter of June 8, 1939,
in which you request the opinion of this department upon
ten questions bearing upon the proper construction of Senate
Bill No. 9, Acts, Regular Session, 46th Legislature, approved
June 2, 1939, amending Sections 3 and 4 of Article II, Chap-
ter 495, Acts 44th Legislature, 3rd Called Session, commonly
known as the Old Age Assistance Act.

The questions which you have presented are compre-
hensive and for the purpose of facilitating an orderly dis-
cussion of the problems presented, we have taken the liberty
to answer them without regard to the order in which they are
contained in your letter of request. The same numbers which
you have assigned to the questions, however, will be observed.

Your ninth question requests the meaning of the
word "resources" as used in Senate Bill No. 9, Acts 46th
Legislature.

One of the primary and settled rules of construction
is that words in common use, when contained in a statute, will
be read according to their natural, ordinary and popular mean-
ing, unless a contrary intention is clearly apparent from the
context or unless there is some necessity in a particular case
for adopting a different meaning. Article 10, Revised Civil
Statutes, 1925; State v. Yturria, 109 Tex. 520, 204 S.W. 315,
2 R. A. 1918 F, 1079; Holloway v. Texas Indemnity Insurance

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Company, (Com. App. 1931) 40 S.W. (2) 75; 39 T.J. p. 197, section 105.

Webster's New International Dictionary, 2nd Edition contains the following in defining the term "resource":

"A new or reserve source of supply or support; a fresh or additional stock or store available at need; something in reserve or ready if needed....

"Available means, as of a country or business; computable wealth in money, property, products, etc.; immediate and possible sources of revenue.

"That to which one has recourse in difficulty; means of resort in exigency...."

We think the foregoing quotation expresses the ordinary and popular meaning of the word "resource" and that such meaning is the sense in which it is used in Senate Bill No. 9. Briefly stated, it is that reserve source of supply or store either in money or property, which may be resorted to in case of need, whatever its derivation may have been, subject however to the limitations of the Act as hereinafter discussed.

Your sixth and seventh questions request the meaning of the word "income" and the proper construction of the phrase "the Commission shall take into account all money received by gift, devise or descent" as used in Senate Bill No. 9. These questions will be discussed together.

That part of the Act referred to reads as follows:

"In calculating income and resources of the applicant, the Commission shall take into account all money received by gifts, devise or descent; ...."

It is stated in 31 C. J. p. 396, that:

"'Income' is a broad, comprehensive, flexible, inclusive, and generic term, capable of definition. Although it has a well defined meaning, not only in common speech, but also under

judicial construction, there appears to be
some difficulty about its precise and scien-
tific definition. The meaning of the term
is not to be found in its bare etymological
derivation; it is rather to be gathered
from the implicit assumptions of its use in
common speech * * * Viewed from the source
of its derivation, the word 'income' may
be defined to be that gain or profit which
accrues, is derived, is gained, or proceeds
from business, capital, commerce, invest-
ments of capital, labor, lands, occupations,
professions, property of any kind or the
like * * *

"Income in its general sense need not
necessarily be money; however, it must be
money or that which is convertible into
money."

It has at times been stated that "income" includes
everything, or all that comes in, but an examination of the
cases cited in support of the assertion discloses that the
court had in mind a distinction between "income" and "outgo"
or that which comes in as contrasted with that which comes
in less an outgoing; the reference not being directed to the
source of the wealth.

Bouvier's Law Dictionary, 3rd Revision defines the
term as:

"The gain which proceeds from proper-
ty labor or business."

Webster's New International Dictionary, 2nd Edition,
defines "income" as:

"That gain or recurrent benefit (usu-
ally measured in money) which proceeds from
labor, business, or property; commercial
revenues or receipts of any kind."

It is stated in Prentice-Hall, Texas, State and Local
Tax Service, Gen. Tax 91-195, paragraph 91,256;

"Property or money received as a gift

is usually recognized by statute as exempt
from income tax. Whether or not so recog-
nized, gifts may be deemed not taxable as
not within the commonly accepted definition
of income."

By specifically providing that money received by
gift, devise or descent should be included in calculating
income, the Legislature evidently recognized the common mean-
ing of the term as not contemplating money or property re-
ceived by gift, devise or descent, and by specifically in-
cluding "money", thereby excluded the consideration of pro-
perty. It is but an application of the well known maxim,
"Expressio unius est exclusio alterius,"

We have concluded that the term "income" as used
in Senate Bill No. 9 means that gain or recurrent benefit,
whether payable in money or kind, which proceeds from labor,
business, property, investment, or the like, and by the use
of the clause quoted in your seventh question, its meaning
has been extended to include money received by gift, devise
or descent but excludes property received from such a source.
It is our opinion that the relationship of the donor to the
applicant is immaterial.

Your eighth question request the meaning of the
term "resident homestead" as that term is defined in the Con-
stitution and laws of the State of Texas, and as used in
Senate Bill No. 9.

Texas Constitution, Article XVI, Section 51, pro-
vides:

"The homestead, not in a town or city,
shall consist of not more than two hundred
acres of land, which may be in one or more
parcels, with the improvements thereon; the
homestead in a city, town or village, shall
consist of lot, or lots, not to exceed in
value five thousand dollars, at the time of
their designation as the homestead, without
reference to the value of any improvements
thereon; provided, that the same shall be
used for the purposes of a home, or as a
place to exercise the calling or business
of the head of a family; provided also,

that any temporary renting of the homestead
shall not change the character of the same,
when no other homestead has been acquired."

Article 3833, R. C. S. 1925, contains substantially the
same language as the above section of the Constitution.

It would be impracticable to attempt to present in
this opinion an exhaustive discussion or description of what is
included in the term "homestead" as understood in Texas law and
to analyze the many situations which will be presented to you
for application of well-established rules as developed by the
courts. This opinion must necessarily be limited to matters
of general consideration.

An examination of the Constitution and statutes dis-
closes that the term "resident homestead" is not specifically
defined but it nevertheless has acquired a definite meaning.

A homestead not in a city or town may consist of as
much as 200 acres together with the improvements thereon and is
commonly designated as a "rural homestead." By its very nature
it contemplates the residence of a family and its use and occu-
pancy as a home.

A homestead in a city, town or village is commonly
known as an "urban homestead" and may acquire its character as
such either from its use for the purposes of a home or as a
place to exercise the calling or business of the head of a
family or both. It is with reference to the urban homestead
that the term referred to in Section 4 acquires its greatest
significance. A well defined distinction exists between a
"business homestead", which arises out of the exercise of a
calling or business thereon and a resident homestead which be-
comes such because of occupancy as a home, although neither
are separate and distinct but go to make up one urban home-
stead. See 22 T. J. pp. 262-280, pp 248-262.

It is our opinion that in using the term "resident
homestead" the legislature intended to include therein the
rural homestead and that part of the urban homestead used for
purposes of a residence, excluding therefrom a "business home-
stead" as defined in law. Instances will arise in which an
individual piece of property may have attached thereto all the
incidents of both a resident and business homestead. In such

Honorable Tom DeBerry, June 12, 1939, Page 6

cases the mere fact that it might also be a business homestead
would not defeat its character as a resident homestead and it
should be so considered.

In construing an act of the Legislature, there is
enjoined upon the courts the duty of looking diligently for
the intent of the Legislature, keeping in view at all times
the old law, the evil sought to be corrected and the remedy
provided. The construction given must be fair, rational,
reasonable and sensible, considering the language and subject
matter with a view to accomplishing the legislative intent and
purpose which is itself the law. As a fundamental rule, a
statute must be construed as a whole, and if possible, appar-
ent conflicts or inconsistencies must be reconciled so as to
give effect to the entire act and all its parts. Every part
must be considered with relation to every other part in order
to produce a harmonious whole. These same considerations are
applicable to amendatory acts for they become a part of the
law which they amend and they will be construed so as to be
in harmony with the remaining parts of the original act.

The foregoing rules are fundamental but we cite in
support thereof the following authorities: Article 10, Re-
vised Civil Statutes, 1925; Texas Bank and Trust Company v.
Austin, (Sup. Ct. 1926) 280 S. W. 161; Magnolia Petroleum
Company v. Walker, (Sup. Ct. 1935) 83 S. W. (2) 929; Popham
v. Patterson (Sup. Ct. 1932) 51 S. W. (2) 680; Petroleum
Casualty Company v. Williams (Com. App. 1929) 15 S. W. (2) 553;
Higgins v. Rucker, 47 Tex 393; Henderson v. United States
Fidelity and Guaranty Company (Com. App. 1928), 10 S. W. (2)
534; American Surety Company of New York v. Axtell Company,
(Com. App. 1931), 36 S. W. (2) 715.

Keeping in mind these rules of construction, we now
pass to a consideration of the Old Age Assistance Act as a
whole.

Article I, Section 1 declares an intention to pay
benefits to the needy aged, and states that it is impracticable
to assist other than those who are in necessitous circumstances.
Section 1, of Article II recites that "subject to the provisions
of this Act, needy persons residing in Texas over the age of
sixty-five (65) years who are in necessitous circumstances
shall be entitled to financial assistance from the State of

Texas." Section 3 of Senate Bill No. 9 provides that : "the Commission may grant financial aid to any needy person who, etc." and it is reiterated in Section 4 that "if from all the facts and circumstances the applicant does not appear to be in a needy condition, assistance shall be denied." The emergency clause of the amandatory act of the 46th Legislature states that because certain things have been considered in determining need, many needy persons have been deprived of their right to receive aid. Other sections of the Act require sworn applications and examinations of the applicant touching upon his economic status and needs. Provision is made for appeal to the Commission from the local authorities by an applicant who is dissatisfied with the allowance given, and the Commission, after a complete and full examination of the record may allow an increase in the assistance or aid given. We think that no other conclusion can be reached from an examination of the Act as a whole but that "need" has been and remains the basic criteria for determining eligibility and the extent of the aid or assistance to be granted under the Old Age Assistance Law. In construing individual provisions of the Act this must be continually borne in mind. The inescapable conclusion is that the Commission would be exceeding its authority in granting aid to those who are not in need, or in amounts in excess of their needs, subject to the other provisions of the act as hereinafter discussed.

Your tenth question requests the proper application and construction to be placed upon Section 11(a) of Article II, Chapter 495, Acts, 1936, 44th Legislature, 3rd Called Session, when said section is considered in connection with Senate Bill No. 9, Acts 46th Legislature, Regular Session.

Section 11(a) reads as follows:

"The amount of old age assistance or aid from State funds that may be paid to any applicant, who has qualified under the terms of this Act, shall never exceed the sum of Fifteen Dollars ($15) per month, and in addition thereto such funds as the Federal government may appropriate and allocate to the State of Texas from time to time shall be distributed among recipients of assistance in like manner as State funds are paid under the terms of this Act; provided, that in no case shall such aid

or assistance be in an amount which, when
added to the income of the applicant from
all other sources, including income from
property and from the State and Federal
government, shall exceed a total of Thirty
Dollars ($30) per month; provided that
the assistance granted herein shall be
granted in such amounts as will provide
reasonable subsistence not incompatible
with good health and decency."

In no place in the Act have we been able to find
any provision which would require the payment of $30.00 per
month (or $15.00 per month State money) regardless of need,
or an amount, which, when added to his income would equal
$30.00 per month, regardless of need.

The first part of Section 11(a) and the first pro-
viso is a limitation upon the authority of the Commission so
that in no event may the assistance granted exceed the amount
specified. The amount which is directed to be paid is found
in the last proviso which is "such amounts as will provide
reasonable subsistence not incompatible with good health and
decency." It might be less, depending on the need and income
of the applicant, but in no event can it exceed $15.00 per
month State money or $30.00 per month including the Federal
grant. This section serves as a specific limitation upon the
amount of money that can be granted just as it did prior to
the enactment of Senate Bill No. 9.

Your first question requests the correct construc-
tion to be placed by the Commission in administering the Old
Age Assistance Law, upon that portion of Senate Bill No. 9
which reads:

"Provided that the applicant shall
not be denied assistance, who does not own
real estate in excess of a resident home-
stead, as the term 'resident homestead' is
defined in the Constitution and laws of the
State of Texas; and in calculating the re-
sources of the applicant, said resident
homestead shall not be considered."

In construing this proviso the language contained

therein cannot be isolated and considered alone but must be
harmonized with the combined provisions of the act as a compre-
hensive unit. One proviso refers to insurance, another to
money, still another to personal property, and this proviso
refers to real estate. It defines the real estate which may
or may not be considered in determining need and calculating
the resources of an applicant. Its purpose is not to guarantee
assistance to every person who does not own a resident home-
stead or who does not own real estate in excess of a resident
homestead regardless of his need, income, or other resources.
To place such a construction on this provision would render
it in such conflict with other specific provisions of the
amendatory act and the purpose of the Old Age Assistance Act
as a whole as to make it entirely incongruous.

The emergency clause in referring to the resident
homestead suggests the purpose of this provision and the situa-
tion to be remedied. It provides:

"The fact that under the present law,
in determining the need of an applicant for
assistance, consideration is given to. . .
the value of resident homestead property,
thereby depriving many needy persons of
their right to receive aid. . .."

In answer to your first question, it is our opinion
that ownership of a resident homestead or the value of such
homestead cannot be taken into consideration in determining
the eligibility of an applicant or in calculating his resources.
No reference is made in the act to income from the homestead
and in the absence of such limiting provision we think income
from the homestead should necessarily be considered as such
and is one of the facts and circumstances surrounding the ap-
plicant which it is made the duty of the Commission to con-
sider. If an applicant owns real estate in excess of a resi-
dent homestead he is not necessarily thereby rendered ineli-
gible but such excess real estate will be taken into considera-
tion in the same manner as any other resource.

Your third question asks the correct construction to
be placed upon that portion of Section 4 of the Old Age Assis-
tance Act, as amended, which reads:

"It is further provided that assis-
tance shall not be denied applicant, if

> married, who has personal property not
> in excess of $1500, and if single, not
> in excess of $1000."

The same considerations mentioned in discussing your first question apply with equal force to the above provision. Its apparent purpose, when construed with the act as a whole, is not to bestow a pension upon every person over 65 years of age without considering "need" or any of the other pertinent provisions of the act. It exempts to needy persons personal property of the value set out and if they otherwise qualify for assistance, aid may not be denied because of ownership of such property. Briefly stated, such personal property may not be considered as a resource in determining eligibility or need. If, however, such personal property actually bears revenue to the applicant such revenue may properly be considered as income in determining his needs or in preparing his budget. As is true with reference to real estate, if an applicant owns personal property in excess of the specified amount he is not automatically disqualified but such excess becomes a resource to be considered.

This provision also presents another question with reference to the amount of personal property allowed a married applicant.

A careful reading of the Act as a whole shows that in determining the eligibility or needs of an applicant, each applicant is to be considered individually. The personal property, not to exceed in value $1500.00, may be either separate property, a community interest in property, or composed in part or both. We must recognize that the legislature is familiar with our property laws and that they were taken into consideration when this provision was enacted. It is not provided that married applicants shall be allowed $750.00 each in personal property, or that they shall be allowed personal property, the combined value of which shall not exceed $1500.00. On the otherhand, it provides that the applicant, if married, shall be allowed personal property not to exceed in value $1500.00. To attempt to give it any other meaning is to do violence to the plain expression of the legislature.

We are of the opinion that each married person must be allowed not in excess of $1500.00 personal property which property may be owned as his separate property, his community

interest in property, or both.

Your fifth question request a construction of that part of Section 4 which reads:

> ". . . Provided that an applicant may
> be carrying on his life insurance not in
> excess of One Thousand ($1000.00) Dollars
> and that any applicant who is carrying life
> insurance not in excess of One Thousand
> ($1000.00) Dollars shall not be disquali-
> fied for assistance and any accumulated cash
> or loan value on said life insurance policy
> or policies shall not be taken into con-
> sideration in calculating the resources of
> said applicant and aid to said applicant
> shall not be denied or reduced or his need
> minimized in any way on account of said
> life insurance policy or policies."

We do not think it is necessary to refer at length to the principles discussed in answering your first and third questions. Suffice it to say that they apply with equal force to the above quoted provision.

You are advised that the Commission is prohibited from considering life insurance on the life of an applicant, not in excess of $1000.00 or any accumulated cash or loan value on such life insurance policy or policies. Life in-surance in excess of $1000.00 does not disqualify an appli-cant as a matter of course but such policy or policies and the accumulated cash and loan value thereon becomes a re-source to be taken into consideration.

The fourth question requests the correct construc-tion of that part of Section 4 which reads:

> "Provided, that an applicant who has
> in excess of $360.00 cash on hand shall not
> be eligible for assistance under this Act."

As we construe this provision it is an absolute limi-tation upon the power of the Commission to grant assistance. Its effect is to declare that any person who has in excess of

$360.00 cash on hand is not needy as a matter of law and therefore not eligible for assistance. The converse, however, is not necessarily true, i. e., an applicant who has less than $360.00 cash is not necessarily entitled to assistance as a matter of right. Such is not the provision of the act. Cash on hand in a sum less than $360 would be one of those factors which must be taken into consideration with all the other facts and circumstances surrounding the applicant bearing upon his eligibility or need. It is another resource.

Your second question requests the correct construction to be placed by the Commission in administering the Old Age Assistance Law, as amended, upon that portion of Section 4 of the Act which reads:

"And provided further, the fact that the applicant has a child or children or other relatives, except husband or wife, able to support said applicant, shall not be considered in determining the applicant's eligibility for assistance, and no inquiry shall be made into the financial ability of said child or children or other relatives, except husband or wife, to support said applicant."

Prior to the amendment of the Old Age Assistance Act by S. B. No. 9, Acts 46th Legislature, Section 3 provided in part:

"The Commission may grant financial aid to any needy person who is in necessitous circumstances provided such person

"* * *

"(g) Is unable to support himself and has no husband or wife able to furnish him or her with support, and has no other means of support."

Section 4, prior to amendment, instructed the Commission to take into account all facts and circumstances including "his opportunity to obtain support from other sources."

These sections as amended omit the words "necessitous circumstances", all of paragraph (g) and the particular part of Section 4 included in quotes in the preceding paragraph.

The House of Representatives of the 46th Legislature, by House Simple Resolution No. 134, prior to the amendment of Sections 3 and 4 requested the opinion of this department as to whether under a fair, just and reasonable interpretation of the Act, the Commission could investigate into and consider the financial status and ability of relatives to furnish support in passing upon eligibility. Said resolution recites in part:

"* * *

"WHEREAS, The Children of an applicant, nor other relatives are legally liable for the support of the aged needy parents or relatives; and

"WHEREAS, Such construction has led to unnecessary expense of investigation and has served to deprive many aged needy of this State from receiving just consideration of their applications; and

"* * *

"WHEREAS, It is thought to be unreasonable to place any construction upon such Act which would require persons not legally liable, to furnish support in passing upon eligibility; and

"* * *

"WHEREAS, Such interpretation constitutes an emergency and an imperative public necessity at this time to the end that it may afford relief to many aged, dependent, necessitous and needy persons in this State, otherwise eligible to support and assistance under said Act; * * *"

In answer to this request it was ruled that a fair and reasonable construction of the Act as a whole, prior to the

present amendment, required the Commission to consider the status or financial ability of an applicant's child or children, and other relatives, in connection with the application for aid. The foregoing, we think serves as a valuable aid in determining the evil to be remedied and the legislative intent in enacting the provision of the amendatory act now under consideration.

The emergency clause of Senate Bill No. 9 provides in part:

"The fact that, under the present law, in determining the need of an applicant for assistance, consideration is given to the ability of children and other relatives of the applicant to support said applicant * * thereby depriving many needy persons of their right to receive aid from the State of Texas, etc."

We think it is clear that the Legislature intended to assist persons who were otherwise eligible for assistance and who were in need but might be denied aid because some child or other relative had the financial ability to give support. The common and ordinary meaning of "ability" signifies the quality or state of being able; power to perform; sufficiency of resources; capability. (Webster's New International Dictionary, 2nd Edition) No doubt in some instances, notwithstanding the fact that children or other relatives might be capable of giving assistance, their support would not always be given and the aged needy might thereby suffer for want of assistance. Evidently the Legislature intended to place children or other relatives in the same category as any other person with relation to the applicant.

We find no provision in the act which would require that aid or support actually furnished by a non-relative, child or other relative, to an aged person, should not be considered in determining his budgetary needs or eligibility for State assistance but if at any time, for any reason, such outside assistance is not received by the applicant the Commission is specifically prohibited by the Act from making inquiry into the financial status or ability of a child or other relative to contribute to the applicant's support. The status or necessities of each individual applicant is made the sole

criteria for determining his eligibility and needs except, however, as provided in the act, consideration may be given to the financial status or ability of a husband or wife.

In construing and interpreting Senate Bill No. 9, Acts 46th Legislature, Regular Session, with relation to its effect upon the Texas Old Age Assistance Law we have attempted to dispose of the principal problems presented by your questions. If material questions in construction which you had in mind have been overlooked we shall be glad to supply the deficiency upon request.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By            /s/
            Cecil C. Cammack
            Assistant

CCC:FL

APPROVED:

/s/ Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

APPROVED
Opinion Committee
By C.O.B., Chairman